## MULTNOMAH COUNTY *v.* DEPARTMENT OF REVENUE; VEDANTA SOCIETY OF PORTLAND, OREGON, INTERVENOR

Charles S. Evans, Chief Deputy County Counsel for Multnomah County, Portland, represented plaintiff.

Eugene E. Feltz, Casey, Palmer, Feltz & Sherry, Portland, represented intervenor.

Defendant Department of Revenue did not appear.

Decision for intervenor rendered February 12, 1976.

CARL N. BYERS, Judge Pro Tempore.

Multnomah County appeals from defendant's Order No. VL 75-60, dated January 29, 1975. The Vedanta Society of Portland, Oregon, the taxpayer which was given affirmative relief by the Department of Revenue to its claim for exemption from real property assessments for the tax year 1973-1974, intervened. The order Multnomah County seeks to set aside held that 118.41 acres of property owned by the Vedanta Society of Portland, Oregon, was exempt from real property taxation on the grounds that it was "actually and exclusively occupied or used in * * * literary, benevolent, charitable or scientific work * * *," pursuant to ORS 307.130. Multnomah County asserts two reasons why the order should be set aside: (1) Most of the property was not actually and exclusively occupied in the religious or charitable work of the Vedanta Society; and (2) The Vedanta Society had applied for and obtained forest land classification under the Western Oregon Small Tract Optional Tax, ORS 321.705 *et seq.,* thereby precluding its exemption under ORS 307.130.

The subject property is located in Multnomah County near Scappoose, Oregon, and consists of two contiguous tracts 40 acres and 78.41 acres in size, improved by a temple, several old cabins, meditation paths and shrines. The Vedanta Society of Portland, Oregon, is a religious order of Indian origin, founded in 1925. The Vedanta religion is sometimes referred to as Hinduism and its spiritual leader, who is called Swami, must be an ordained monk of the Ramakrishna Order of India. The subject property is used as a

religious retreat and place of worship by the members and friends of the society.

The property was acquired by the society in 1936. The evidence is unclear as to exactly when an exemption was granted; however, it is apparent that by 1946 the 78-acre tract was exempted. Multnomah County informed the Vedanta Socity by letter dated November 11, 1971, that the property was no longer exempt and would be taxable during the 1971-1972 tax year. The society was at that time informed of its right to appeal the assessor's action.

Knowing that the taxes on the property would be in excess of the Vedanta Society's annual income, means were sought to reduce the threatening tax burden. Officials at the assessor's office suggested that the society apply for assessment under the Western Oregon Small Tract Optional Tax Act, which it did. The application was completed on February 7, 1972. In response to the following question in the Department of Forestry's Application Form 4-3-1-201, the "yes" box was checked:

"2. Is the above described property being held or used for the predominant purpose of growing and harvesting trees of a marketable species?"

The following affirmation on the same form was signed by Stuart Bush, President of the Vedanta Society of Portland, Oregon, and James H. Prior, Jr., Treasurer:

"I (we) declare under the penalties for false-swearing that the information submitted on this application and any accompanying papers has been carefully examined and to the best of my (our) knowledge it is a true, correct and complete statement."

The application was granted by the State Forester on April 10, 1972.

Mr. John Long, an appraiser and field investigator for Multnomah County, testified for the plaintiff as to the extent of the use of the property on the assessment date, January 1, 1973. He had made a personal examination of the property in February of 1975, but testified that the exemption was denied on the basis of a, prior investigation made by another appraiser in August 1971. Mr. Long testified from the notes of the earlier appraiser, which indicated that there was dust all over the furniture of the main temple, causing the appraiser to conclude that the temple was not being used. Although not objected to as being hearsay, the court places little weight on this portion of Mr. Long's testimony because of his lack of personal knowledge.

Mr. Long also testified regarding his 1975 visit to the property. He indicated that there were several old cabins on the property, one of which was occupied by a couple acting as caretakers. There was also a temple and a number of recently built shrines. However, the plaintiff produced scant evidence of the condition and use of the property on the assessment date in question.

Mr. Stuart Bush, president of the Vedanta Society for the last 17 years, testified on behalf of the intervenor. He said that the property has long been used as a whole but it has been gradually upgraded over the last 40 years. There has been special effort during the last two or three years to make improvements in the form of meditation paths and roads throughout the property, together with a number of shrines.

The final witness for the society was Swami Aseshananda. It was learned that the Vedanta religion involves prayer and meditation in the outdoors. The trees, some of which were planted by the society, represent a "cathedral" for the Vedanta worshippers. He agreed with Mr. Bush as to the extent of use of the

property and that it is contrary to the principles of the society to cut down trees. A number of offers over the years to purchase or log the property had been refused.

Multnomah County asserts that the Vedanta Society is not using the property to the extent required for exemption under the statute. It concedes that the temple and a one-acre site qualify for exemption, but disputes that the whole 118.41 acres of land is necessary for the society's purposes.

ORS 307.130 exempts property owned and "actually and exclusively occupied or used" by "literary, benevolent, charitable and scientific" institutions. In *Archdiocese of Portland v. Dept. of Rev.,* 5 OTR 111 (1972), *aff'd,* 266 Or 419, 513 P2d 1137 (1973), it was held that a religious organization incorporated to carry out its work qualifies as a benevolent or charitable organization under ORS 307.130.

The language of ORS 307.130 was exhaustively analyzed by the Oregon Supreme Court in *Mult. School of Bible v. Mult. Co.,* 218 Or 19, 36-37, 343 P2d 893, 901 (1959), in which the court said:

"The foregoing authorities compel the conclusion that the words 'exclusively occupied or used,' as employed in ORS 307.130, as amended, refer to the primary purpose for which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution."

The court also emphasized that the use of the property need not be indispensable to its primary purpose.

In *Morning Cheer v. Co. Com'rs.,* 194 Md 441, 71 A2d 255 (1950), the court was concerned with 227.25 acres of land owned by a religious corporation. The

lower court had exempted only one acre of property, but the Maryland Supreme Court held that the 35 acres of cleared land would be exempted under a statute pertaining to property used for religious purposes. The land was used ten weeks of the year as a retreat for daily religious services, prayer meetings, and bible study. The 35 exempted acres contained 20 cottages, a lodge with a dining room, living room and bedrooms, and a pastor's house.

The *Morning Cheer* decision was followed in *Supervisor of Assess. v. Peter & John Radio Fel., Inc.,* 274 Md 353, 335 A2d 93 (1975), where the court held that 472.562 acres owned by the Fellowship at Millers were exempt under a Maryland statute providing an exemption for houses and buildings used exclusively for public worship.

In *Assessors of Dover v. Dominican Fathers Province of St. Joseph,* 334 Mass 530, 540-541, 137 NE2d 225, 231 (1956), the court allowed a religious exemption for a priory, which is a Dominican house similar in most respects to a monastery:

"The real estate owned by the taxpayer comprises seventy-eight and five tenth acres. During most of the time only a relatively small portion of this area is used. But the area, which is wooded and pleasant, is used at times by members of the priory for walks during recreational periods. The rule deducible from our decisions is that what lands are reasonably required, and what uses of land will promote the purposes for which the institution was incorporated, must be determined by its own officers. So long as they act in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation their determination will not be interfered with by the courts. * * *"

This same deference to the good-faith determina-

tions by the directors of a religious institution was an important factor in *San Francisco Boys' Club, Inc. v. County of Mendocino,* 254 Cal App2d 548, 62 Cal Rptr 294 (1967). *See also Christward Ministry v. County,* 271 Cal App2d 805, 76 Cal Rptr 854 (1969).

A final case which may also be of interest is *Green Acre Baha'i Institute v. Eliot,* 150 Me 350, 354, 110 A2d 581, 584 (1954). The court, in allowing the religious exemption, noted:

> "Among the properties of the petitioner were two undeveloped woodland areas. There was evidence that those participating in the program regularly used these areas for walks, prayer, meditation, outdoor meetings and recreation. There was further evidence that certain locations therein had special significance for members of the faith arising out of a former visitation to the area by a leader of the faith. There was also evidence of a hopeful, though not a clearly planned or definite intention, that the area might in the future be used for the enlargement and development of the institution's facilities. There was no suggestion of any present intention or purpose to hold the property as commercial timberland or for any other revenue use. Upon this evidence, the justice below found that the institution was devoting the entire tract to its benevolent and charitable uses. Under such circumstances, such an area may be shown to be exempt. * * *"

The Vedanta Society uses the subject property as a retreat for purposes of prayer, meditation and worship. The acreage provides an environment that is compatible to, and necessary for, the particular form of religious worship engaged in by the members of the society. It may be that the society could use fewer acres, but it is also arguable that it could use more. In the absence of fraud or other evidence of bad faith, the court is hesitant to substitute its judg-

ment for that of the officials of the Vedanta Society as to how much property is necessary for its purposes.

The one-acre exemption given by Multnomah County for the property immediately surrounding the main temple is clearly inadequate. The testimony of a Multnomah County appraiser, based on notes made by previous appraisers, or an inspection made years after the assessment date, is not persuasive. Multnomah County has not met the burden of proof required to set aside the Department of Revenue's determination on the issue of whether the entire property was used for the benevolent and charitable work of the society.

The second contention made by Multnomah County is that the act of applying for and receiving an exemption under the Western Oregon Small Tract Optional Tax in some way legally precluded the Vedanta Society from receiving its exemption.

It is argued that when officials of the Vedanta Society applied for the optional tax it affirmed that the property was used for "the predominant purpose of growing and harvesting trees of a marketable species." The plaintiff contends that this action precludes the society from now claiming that the property is used exclusively for exempt purposes under ORS 307.130. At trial, the witnesses on behalf of the society admitted that there was never any intent to harvest the trees, much less a predominant intent. In fact, it was learned that the harvesting of the trees would violate the principles upon which the Vedanta Society operates.

The county is correct in saying that the statements made by the society in applying for the Small Tract Optional Tax directly contradicts its present position. The society never intended to hold the land for the "predominant purpose of growing and harvesting trees." That purpose is incompatible with "actually

and exclusively occupying the property" for charitable or benevolent work. *See generally, Dayton v. Dept. of Rev.*, 5 OTR 56 (1972).

However, assuming that the Vedanta Society has taken legally inconsistent positions, what should be the result? It has been suggested the society is now estopped from claiming exemption under ORS 307.130. But the making of a false statement alone does not constitute an estoppel; there must be some form of detrimental reliance. This was made clear in *Security S. & T. Co. v. Portland F. M. Co.*, 124 Or 276, 292, 261 P 432, 437 (1927), where the court said:

> "To constitute an equitable estoppel, * * * there must have been some omission, misconduct, misrepresentation or fraud by the party against whom the estoppel is asserted, or by someone with whom he was in privity, which caused another to be misled and, because of being misled, to have been induced to have altered his position. * * *"

There has been no showing by Multnomah County that it has been in any way misled by any misrepresentations made to the State Forester by the Vedanta Society. To the contrary, Mr. Bush testified that when the society investigated the applicability of the optional tax law provisions, he informed the State Forester's office that the predominant use of the property was for religious purposes and not to grow trees. He was advised to file the application anyway, apparently out of sympathy for the society's plight.

It should be remembered that "[a]ccountability for wrong is one thing, the wrong is another." *United States v. Thompson*, 257 US 419, 437, 42 S Ct 159, 66 L Ed 299, 305 (1922). The possible falsehoods involved in the Vedanta Society's application for taxation under the Western Oregon Small Tract Optional Tax are regrettable. The legislature has prescribed punishment for such conduct (*see, e.g.,* ORS 162.075),

and the executive branch may prosecute such conduct under the laws available to it. However, this court will not fashion any ad hoc punishment in the form of denial of tax exemption. The inconsistent actions shown tend to impeach the testimony of the Vedanta Society officials, but the court sees no other legal effect for purposes of this case.

The court finds the preponderance of the evidence supports the determination of the Department of Revenue that the subject property is used for exempt purposes. Therefore, defendant's Order No. VL 75-60, dated January 29, 1975, is hereby affirmed.

Each party shall bear its own costs.