# IN THE OREGON TAX COURT

## FOUNDATION OF HUMAN UNDERSTANDING
*v.*
## DEPARTMENT OF REVENUE
(TC 1916)

Charles O. Porter, Eugene, represented plaintiff.

James C. Wallace, Assistant Attorney General, Tax Section, Department of Justice, Salem, represented defendant.

Decision part for plaintiff and part for defendant rendered April 9, 1984.

## SAMUEL B. STEWART, Judge.

Plaintiff timely filed with the Josephine County Assessor, for tax year 1981-82, the verified statement required by ORS 307.162 to the end that the real and personal property listed thereon would be exempt. The assessor having denied plaintiff's claim for exemption, plaintiff appealed to defendant which likewise denied plaintiff's claim for exemption. Plaintiff appealed to this court.

The issue is whether property in Josephine County owned by plaintiff is exempt under ORS 307.140. The statute reads as follows:

"Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:

"(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property.

"(2) Parking lots used for parking or any other use as long as that parking or other use is permitted without charge."

■ The first question is: Is plaintiff a "religious organization"? Defendant questioned the religious nature of plaintiff's activities, e.g., rap sessions and Roy Masters' lectures (Defendant's Brief, at 13). Defendant may not do so. Justice Douglas, in *United States v. Ballard,* 322 US 78, 64 S Ct 882, 88 L Ed 1148, 1154 (1943), involving an indictment for using the mails to defraud in which respondent's alleged religious doctrines were stated to be well known to be false, stated, with reference to the first amendment of the United States Constitution:

"Man's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views."

Article I, sections 2 and 3, of the Oregon Constitution provides no less. *City of Portland v. Thornton,* 174 Or 508, 512-513, 149 P2d 972 (1944).

Accordingly, the court holds plaintiff to be a religious organization within ORS 307.140.

The second question is: Do plaintiff's three properties[1] constitute houses of public worship? Of the three properties, only the former Seventh-Day Adventist Church on the Evelyn Street property, as a historical matter, meets the test stated by former Justice Hall S. Lusk, serving as Judge Pro Tempore in this court, in *Archdiocese of Portland v. Dept. of Rev.,* 5 OTR 111, 116, quoting from *Evangelical Baptist B. & M. Soc. v. City of Boston,* 204 Mass 28, 31, 90 NE 572 (1910):

" '* * * The purpose of the provision was to exempt from taxation ordinary church edifices owned and used in the usual way for religious worship. * * *.' "

The building does not now, under its current ownership and use by plaintiff, meet that test because it is not

---

[1] Evelyn Street—large church building, formerly Seventh-Day Adventist, two-story residence, shed and 3.70-acre lot on which the foregoing are situated. Tall Timber Ranch—372.65 acres, large residence with garage, small residence, barn, various outbuildings, machine shop/dormitory. Most of lands specially assessed as forest land. South River Road—6.51 acres, residence, detached garage with workshop and barn.

used in the usual way for religious worship. In plaintiff's Exhibit 25, at 1, second paragraph, Roy Masters[2] states that:

> "FHU [The foundation of Human Understanding] rejects the institutionalized church and encourages persons to seek God through meditation, through solitude, through study and instruction, and through work therapy, * * *."

In plaintiff's Exhibit 25, at 1, sixth paragraph, Roy Masters further states:

> "The Foundation does not believe in the conventional church, Sunday morning preaching and Sunday schools."

Furthermore, the church building is not now used as a house of public worship. Mr. Masters states in Exhibit 21, the ultimate paragraph at 3, continued in the first paragraph at 4:

> "[O]ur Church believes that the proper worship of God consists in the private communion of the soul of man with his Creator by means of the highest form of prayer, meditation. * * * [W]e insist that it [worship] should be private and not public."

Accordingly, it follows that plaintiff's three properties do not constitute "houses of public worship" and are not, therefore, qualified for exemption under ORS 307.140.

On the basis of similar reasoning, defendant, in its Opinion and Order No. VL 82-1606 and subsequently in its brief in this matter, found or alleged that none of plaintiff's three properties qualified for exemption under ORS 307.140 as "houses of public worship." But such reasoning, both by defendant and by this court, at this juncture assumes that restricting the exemption to religious organization's houses of public worship does not violate the first amendment to the United States Constitution and article I, sections 2 and 3 of the Oregon Constitution. A recent decision of the United States Supreme Court makes it quite clear, however:

> ■ "[T]hat no State can 'pass laws which aid one religion' or that 'prefer one religion over another.' * * * This principle of

---

[2] Plaintiff was organized pursuant to the General Non-Profit Corporation Law of California in 1963. (Plaintiff's Exhibit 1.) Roy Masters was and is one of three directors and President of plaintiff. However, for all intents and purposes, plaintiff is a corporation sole. As Roy Masters testified, "Remember I'm in charge of what I'm given to disseminate to people. It is a theocracy, not a democracy." (Tr 218.)

denominational neutrality has been restated on many occasions." *Larson v. Valente,* 456 US 228, 102 S Ct 1673, 72 L Ed2d 33, 48 (1982).

If ORS 307.140 restricted property tax exemption to "houses of public worship," as it did for many years prior to 1945, there would be little argument but that the statute would effectively discriminate against religious organizations who did not engage in public worship. But the statute is no longer so limited. In 1945, the legislature added to "all houses of public worship" the language "and other additional buildings used solely for entertainment and recreational purposes by religious organizations, and the lots on which they are situated, * * *." 1945 Or Laws ch 296, § 1(5). The language of the 1945 amendment remained unchanged until 1973 when the legislature adopted the language now in use, *i.e.,* added to "houses of public worship and other additional buildings" the words "and property" and inserted after the words "used solely for" the words "administration, education, literary, benevolent, charitable." 1973 Or Laws ch 397, § 1. The rationale for the 1973 amendment was the decision of this court that while the chancery office of the Archdiocese of Portland did not qualify as a "house of public worship" under then ORS 307.140, it did qualify under ORS 307.130, which granted exemption to incorporated literary, benevolent, charitable and scientific corporations, on the ground that the chancery office was used for the advancement of religion, a charitable purpose. *Archdiocese of Portland, supra.* Accordingly, the legislature added the language of ORS 307.130 to ORS 307.140.

Notwithstanding the foregoing, defendant places emphasis on the legislature's use of the words "and other additional buildings and property" alleging that a condition precedent to a religious organization's exempt status of such other additional buildings and property is ownership of a house of public worship and since plaintiff herein has none, its three properties do not qualify for exemption. (Defendant's Brief, at 22.) While this is a possible construction of the statute, it is a construction which would, as noted above, result in a violation of the first amendment to the United States Constitution and article I, sections 2 and 3 of the Oregon Constitution. Under such circumstances, the courts are bound to interpret the statute, if possible, in such a way as

to sustain its constitutionality. *Pacific States Box & Basket Co. v. White,* 296 US 176, 56 S Ct 159, 80 L Ed 138, 146 (1935); *State v. Fry Roofing Co.,* 9 Or App 189, 196, 495 P2d 751, 754 (1972).

■ An alternate construction to that of the defendant's is that the legislature intended, by its grammatical construction, to provide two classes of exempt property, neither dependent upon the other, *i.e.,* (1) houses of public worship and (2) other buildings and property used solely for administration, education, etc., purposes. Since such a construction would sustain the statute's constitutionality, the court adopts it and rejects the defendant's construction.

■ In plaintiff's Exhibit 25, at 1, last sentence of the eighth paragraph, Roy Masters states that: "All of these [three] properties were used to provide a religious atmosphere necessary to Foundation members and supporters to find God through meditation, instruction, study, work and recreation." Accordingly, it would appear that plaintiff is alleging that it owns the three properties for the charitable use of the advancement of religion. As such, plaintiff must demonstrate (1) that the three properties are reasonably necessary to accomplish its religious objectives and (2) the actual use of the property is consistent with the claimed necessity. *German Apost. Christ. Church v. Dept. of Rev.,* 279 Or 637, 643, 569 P2d 596 (1977).

In plaintiff's Exhibit 25, beginning near the bottom of page one and continuing onto page two, Roy Masters states:

"The particular uses of each of the three properties were as follows:

"1. Tall Timber Ranch: A park-like sanctuary for spiritual and work therapy; a retreat for those who need to withdraw temporarily from the horrors of stress and family strife while they study, receive instruction, learn how to meditate and receive the benefits of both spiritual and work therapy. Living quarters provided for retreats and staff; evangelical materials available for use and sale; farms and outbuildings, fields and forest, are all used for the religious atmosphere necessary to dispel stress and to bring the retreats closer to God.

"2. *South River Road.* Parsonage and staff quarters; [continued from below] a farm and six acres, was and is used

as a refuge and place of rest for our minister-teachers who for stretches of time live with our troubled guests and students 24 hours a day, seven days a week. Some selected students are permitted to come to the South River Road property and engage in various work projects there. This does not interfere with its function as a place for teachers to go when they need a period of rest.

"3. *Evelyn Street.* Church building for religious seminars, meetings, education; caretaker residence, maintenance, protection, accessibility.

"A store for selling books and tapes is also located in the church building.

"Persons who cannot pay for tapes and printed materials may have them upon request."

Tall Timber Ranch is basically used as a retreat facility. This court has had occasion to rule on the tax exempt status of charitable property so used. In that case, plaintiff Society owned 118.41 acres of land improved by a temple, several old cabins, meditation paths and shrines. The Multnomah County Assessor alleged that only the temple and a one-acre site were exempt, the balance taxable because it was not necessary for the Society's purposes. This court held that:

■ "The Vedanta Society uses the subject property as a retreat for purposes of prayer, meditation and worship. The acreage provides an environment that is compatible to, and necessary for, the particular form of religious worship engaged in by the members of the society. It may be that the society could use fewer acres, but it is also arguable that it could use more. In the absence of fraud or other evidence of bad faith, the court is hesitant to substitute its judgment for that of the officials of the Vedanta Society as to how much property is necessary for its purposes." (*Multnomah Co. v. Dept. of Rev.,* (Vedanta Society of Portland, Oregon, intervenor), 6 OTR 325, 331-332 (1976).)

■ In the case of Tall Timber Ranch, the ranch provides an environment that is compatible to and necessary for the particular form of religious worship engaged in by the retreatants and staff. Accordingly, the court finds that particular property exempt from property taxation except for that portion of the living quarters devoted to selling evangelical materials. This court, in *Archdiocese of Portland v. Dept. of*

*Rev., supra,* makes it quite clear that carrying on a profit-making business in property sought to be exempt as a charitable use for the advancement of a religion precludes exemption of any property or portion thereof so used. This construction is consistent with ORS 307.140 which provides, in relevant part, that "any part of any * * * buildings or property which is kept or used as a store or shop * * * shall be assessed and taxed the same as other taxable property."

The court further notes that most of the lands in the property are specially assessed as forest lands. If the intent is to subsequently harvest trees thereon of a marketable species, that purpose would be incompatible with the exemption granted herein for the charitable use of the advancement of religion. Accordingly, upon harvesting, plaintiff would lose the exemption granted herein and suffer the consequences such would entail. *See* ORS 321.257 *et seq.,* Western Oregon Forest Land and Severance Tax.

■ The South River Road property is described as a parsonage and staff quarters. The usual rationale for the exemption of a parsonage is that the continuous presence of a religious leader near the church is needed to attend to the religious needs of the congregation. *German Apost. Christ. Church, supra,* at 643. In this instance, the South River Road property is approximately 20 miles from the Tall Timber Ranch. (Tr 237.) This is hardly near where many of those needing counseling resided and, in fact, no counseling occurred there. (Tr 97.) Accordingly, it does not appear that the minister-teachers' part-time residence there is needed to attend to the religious needs of troubled guests and students. As such, the South River Road property is not entitled to exemption.

The Evelyn Street property, insofar as it involves the former Seventh-Day Adventist Church and the land upon which that improvement is situated, is reasonably necessary to accomplish plaintiff Foundation's religious objectives of providing a place for the conduct of seminars, meetings and educational activities for the benefit of supporters of the Foundation who live and work in the Grants Pass area and who do not now need the program offered by Tall Timber Ranch. The actual use of the property appears to be consistent therewith except for the store maintained on the premises for

selling books and tapes. The court has earlier indicated herein that any portion used as a store or shop in property sought to be exempt as a charitable use for the advancement of religion precludes exemption of that portion. Accordingly, the former Seventh-Day Adventist Church is exempt except for that portion used as a store.

The Evelyn Street property, insofar as it involves the caretaker residence and the land upon which that improvement is situated, is not reasonably necessary to accomplish plaintiff Foundation's religious objectives because the residence was not used for such purposes but rather used as a personal residence by the caretaker.

Defendant's Opinion and Order No. VL 82-1606, denying plaintiff's appeal that its properties in Josephine County be accorded property tax exemption, is affirmed in part and reversed in part. The assessor and the tax collector of Josephine County shall amend the assessment and tax rolls in conformity with this court's opinion. If taxes have been paid by the plaintiff in excess of those required by the tax roll as amended, the excess, with statutory interest thereon, shall be refunded to the plaintiff by the Board of County Commissioners of Josephine County pursuant to ORS 311.806 and 311.812.