Argued and submitted May 8, 1985, affirmed in part, reversed in part and remanded to the Tax Court July 1, 1986

# FOUNDATION OF HUMAN UNDERSTANDING,
*Respondent - Cross-Appellant,*

*v.*

# DEPARTMENT OF REVENUE, STATE OF OREGON,
*Appellant - Cross-Respondent.*

(OTC 1916; SC S30786)

722 P2d 1

James C. Wallace, Assistant Attorney General, Salem,

argued the cause for appellant - cross-respondent. With him on the briefs was Dave Frohnmayer, Attorney General, Salem.

Charles O. Porter, Eugene, argued the cause for respondent - cross-appellant. With him on the briefs was Albert P. Blaustein, Eugene.

LENT, J.

## LENT, J.

The issue is whether three parcels of real property owned by plaintiff Foundation of Human Understanding (Foundation) qualify for exemption from ad valorem taxation for the tax year 1981-82 as "houses of public worship" or "other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes." ORS 307.140.[1]

The Foundation is a corporation organized in 1963 under the laws of California as a nonprofit corporation. In 1972 the Foundation became a church and amended its articles of incorporation accordingly. The Foundation's operations are largely directed by Roy Masters. The Foundation has been granted exempt status from state income taxes in California and from corporate excise taxes in Oregon pursuant to ORS 317.080. The Foundation also has been granted exempt status from federal income tax as a charitable corporation under IRC § 501(c)(3).

The Foundation seeks an exemption from taxation for three parcels of real property. The first parcel is a 3.70 acre lot on Evelyn Street in Grants Pass,[2] on which is a building, formerly used by the Seventh Day Adventists as a church, and a caretaker's residence. The Foundation used the church building for seminars and meetings. The residence was used by a caretaker who lived there and was accessible 24 hours a day to receive calls, protect the property, sell merchandise and counsel people.

---

[1] ORS 307.140 provides:

"Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:

"(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property.

"(2) Parking lots used for parking or any other use as long as that parking or other use is permitted without charge."

[2] This is tax lot 3500.

The second parcel is 6.15 acres on South River Road,[3] on which is a residence, a barn and a detached garage with workshop. The Foundation refers to it as a "parsonage." The Foundation counselors (staff members) lived there on occasion when they needed a respite from their work performed at Tall Timber Ranch. Roy Masters and his wife, Ann, stayed there when they were in town.

The third parcel is the Tall Timber Ranch, consisting of 370.65 acres in two tax lots in Selma, Oregon. Lot 900 contains 184 acres and is specially assessed for forest land. Lot 200 totals 186.65 acres and contains multiple uses: 143.45 acres are specially assessed for forest land, 43.20 acres are assessed at market value and a 2-acre homesite is assessed at market value. The property includes a large residence with garage, a small residence, a barn, various outbuildings and a partially constructed machine shop/dormitory. The ranch is used as a retreat for guests who pay tuition to live and work there. They receive counseling and practice meditation.

The Josephine County Tax Assessor denied the Foundation's application for exemption on these properties for the tax year 1981-82. The Department of Revenue (Department) affirmed. The Foundation pursued its case in the Tax Court, ORS 305.419, and the Tax Court reversed in part.

The Tax Court exempted the former church on the Evelyn Street property as "reasonably necessary" to provide "a place for the conduct of seminars, meetings and educational activities for the benefit of supporters of the Foundation who live and work in the Grants Pass area and who do not now need the program offered by Tall Timber Ranch." *Foundation of Human Understanding v. Dept. of Rev.,* 9 OTR 429, 436-37 (1984). That portion used as a bookstore was not exempted. The court disallowed an exemption for the caretaker's residence because it did not further the organization's religious objectives.

The Tax Court ruled that the South River Road property did not qualify for exemption because the residence

---

[3] This is tax lot 4000.

was not used to insure that minister-counselors would be accessible to the congregation.

The Tax Court exempted the entire ranch, except the portion of the living quarters devoted to selling evangelical materials, reasoning that the "ranch provides an environment that is compatible to and necessary for the particular form of religious worship engaged in by the retreatants and staff." *Foundation of Human Understanding v. Dept. of Rev., supra,* 9 OTR 429 at 435.

The Department appeals. ORS 305.445. It does not dispute that the Foundation is a religious organization within the meaning of ORS 307.140. It contends that the Foundation is not a nonprofit organization, that the properties are put to a commercial, *i.e.,* nonexempt, use, and that the Foundation did not prove that the properties served a charitable use.[4] The Foundation cross-appealed, seeking exemptions for the Evelyn Street caretaker's residence and the South River Road "parsonage."

## I. NONPROFIT STATUS

The Foundation does not dispute the Department's claim that nonprofit status is necessary to obtain a religious tax exemption. The issue here is one of proof. We review the evidence *de novo,* ORS 305.445, but we avoid a detailed discussion of the evidence. *Reynolds Metals Co. v. Dept. of Rev.,* 299 Or 592, 705 P2d 712 (1985).

The Foundation points to its articles of incorporation as *prima facie* evidence that it is a charitable institution. *Cf., Benton Co. v. Allen,* 170 Or 481, 485, 133 P2d 991 (1943), holding that the articles of incorporation are *prima facie* evidence of the character of a corporation as a "charitable institution." The purpose of the Foundation, as stated in its articles of incorporation, is "the promalgation [sic] of the religious, charitable, scientific, and literary and educational aspects of the theological concepts upon which this church was founded * * *." The articles provide that the Foundation

---

[4] The Department cites ORS 307.130 and 307.140. The Foundation's complaint to the Tax Court relied upon ORS 307.140 alone. The reference to ORS 307.130 was stricken at the request of the Department. We consider only those issues raised in the pleadings. *Reynolds Metals Company v. Dept. of Rev.,* 299 Or 592, 705 P2d 712 (1985), former opinion modified 300 Or 250, 709 P2d 710 (1985).

"is organized and operated exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1954." The articles also provide that upon dissolution, any excess assets are to be distributed to a nonprofit fund or corporation organized for charitable, educational, religious or scientific purposes.

The Department attempts to meet the *prima facie* evidence by demonstrating that instances of self-dealing and private inurement occurred, and that the properties were put to commercial, apparently profit-seeking, uses.

A. *Private Benefit.*

The Department quotes from Hopkins, The Law of Tax-Exempt Organizations 209 (4th ed 1983), that in order to maintain tax-exempt status an organization must

> "establish that it is not organized and operated for the benefit of private interests such as designated individuals, the creator or his or her family, shareholders of the organization, persons controlled (directly or indirectly) by such private interests, or any person having a personal private interest in the activities of the organization."[5]

Though this quotation accurately reflects some of the general requirements for tax exemptions, the Department's claims of self-dealing and private gain are not borne out by the evidence. The Department asserts that Roy Masters was not forthcoming about his private income. The salient fact here is that the only testimony presented (that of Masters) establishes that Masters' personal wealth did not derive directly or indirectly from the Foundation sources. The Department states that Masters was involved in numerous boat purchases. The evidence shows (again, solely Masters' testimony) that

---

[5] We find a similar, more general statement of the same rule in Ginsberg, *The Real Property Tax Exemption of Nonprofit Organizations: A Perspective,* 53 Temple LQ 291, 316-17 (1980):

> "The primary tests of nonprofit status in most states are that no individual connected with the entity may receive any personal pecuniary benefit except for reasonable compensation for services rendered, and that any excess of income over expense derived from the operation of the property and all proceeds from the sale of property owned by the organization must be devoted to the furthering of the exempt purposes." (Footnotes omitted.)

These quotations are the views of the respective authors as to what the *law* may be; they are not guides to appraisers for arriving at the value of property.

these purchases were made with Masters' personal money, including savings from his salary as a minister with the Foundation, and not with improperly distributed Foundation resources. The Department claims that it was improper for Masters to sell his personal automobile to the corporation; however, the Department presented no evidence and makes no claim that the sale price did not represent a fair market value. Masters testified that he received gifts of personal property from radio listeners and supporters. The value of these gifts, approximately $1,500 - $2,000 per year, was not reported as income to Masters or to the Foundation. Masters' annual Foundation salary and housing allowance, when added to the value of these gifts, total approximately $50,000 which Masters receives as a minister of the Foundation. There is no evidence that this is an excessive salary. The Department points to expenditures made on behalf of Masters by the Foundation and claims that some "appear to be personal in nature." We find the evidence insufficient, however, to support this allegation.

In addition to the above, the Department points to the facts that Masters controls the board of directors which, in turn, controls the Foundation's financial affairs, that six out of nine board members are members of the Masters family, that Masters' wife Ann's salary was reduced in consideration of the relative tax consequences to her, and that the Foundation regularly consults its tax experts to maintain its exempt status.

■ Neither private inurement nor self-dealing is necessarily inferred from any of this evidence. We find that the Foundation's nonprofit status is established.

B. *Commercial Use of the Properties.*

The Department contends that the Foundation's properties are "tainted with impermissible commercial use." The Department points to the fact that the Foundation sells books and tapes and charges tuition to those who stay at the ranch.

There is evidence from both parties that part of the Evelyn Street property is used for the sale of books and tapes. This use would not be exempt by the terms of ORS 307.140, which prohibits exemption for "any part of any house of

public worship or other additional buildings or property which is kept or used as a store or shop * * *." The Department, however, does not claim that sale of merchandise is the primary use of any of the properties. The statute itself recognizes that some "part" of exempt property may be used for a nonexempt purpose and apportions the exemption accordingly.

■ Charging fees does not automatically transform a charitable exempt organization into a nonexempt one. In *Benton Co. v. Allen, supra,* 170 Or at 486-87, this court stated:

> "It is well settled that the fact that fees are charged those patients who are able to pay does not derogate from the charitable character of the institution, provided the income so derived is used to maintain the institution or extend its facilities devoted to charity, or for other charitable purposes."

Similarly, the concern in *Corporation of Sisters of Mercy v. Lane Co.,* 123 Or 144, 154, 261 P 694 (1927), was not with the fact that patients were charged a fee for hospital services, but rather with whether the fees were devoted solely to maintaining the charitable institution.

Roy Masters testified that the tuition was used "to help defray operating expenses." He stated that there is little "excess revenue" from tuition at the ranch. The Department did not contradict this evidence. We find little in the record to support the Department's claim that these properties, with the exception of sales activities, were used to make a profit.

Having found that the Foundation is a nonprofit organization not primarily engaged in commercial endeavors, we consider the primary uses of each of the three subject properties.

## II. PRIMARY USE OF PROPERTIES

■ The Department asserts that the properties are not put to any charitable uses. By charitable uses the Department appears to mean provision of room and board at the ranch at no expense, or distribution of free religious materials. However, charity is not so narrowly defined. We have recently reaffirmed that the advancement of religion is a charitable purpose, at least when it takes the form of adherence to religious tenets, and property used primarily for this purpose can be exempt from taxation. *House of Good Shepherd v. Dept.*

*of Rev.,* 300 Or 340, 710 P2d 778 (1985). In that case we allowed an exemption for a convent wherein an order of Catholic nuns lived and prayed communally in accordance with the tenets of their religion. We agreed with the taxpayer that "[a] religion may be advanced by communal living in an atmosphere of prayer and adherence to canon law." 300 Or at 344.[6]

We turn to the specific uses taxpayer makes of the properties at issue.

*Evelyn Street*

■ The former church building and the land upon which it is situated were used for educational activities, seminars and weekly group discussions, called "rap sessions." The public, as well as ranch retreatants, were invited to these weekly meetings, which were led by members of the Masters family. Roy Masters testified that the church building was used by the Foundation "to promote and to evangelize and to implement our teachings." The building fulfills many of the functions of the churches of more traditional religions. It was in this building that Foundation members congregated on a weekly basis to discuss and share their beliefs, and where interested outsiders could learn about and participate in church teachings. The Tax Court properly exempted this building.

■ That portion of the church building used for selling books and tapes is not exempt. ORS 307.140 denies an exemption for "any part" of a building used as a "store or shop." The Foundation argues on cross-appeal that its bookstore should be exempt because it advances the aims of the religion, it does not make a profit, and it does not compete with nonexempt businesses. These distinctions are not pertinent under this statute. The Foundation would have us disregard the language of the statute in order to allow an exemption. This we decline to do.

■ The caretakers' residence is located next door to the church building. It is used as a residence for a husband and wife who are available day and night to receive phone calls,

---

[6] In *Archdiocese v. Dept. of Rev.,* 266 Or 419, 513 P2d 1137 (1973), this court agreed with the Tax Court opinion, 5 OTR 111 (1972), that property used for the advancement of religion by a religious non-profit corporation was put to a charitable use and could be entitled to exemption under ORS 307.130.

counsel people by telephone, protect the church from vandalism and sell books and tapes. The Foundation asserts that this use of the property is reasonably necessary for the adjacent church building activities.

In *Mult. School of Bible v. Mult. Co.,* 218 Or 19, 343 P2d 893 (1959), we held the on-campus residences of the building superintendent and the cafeteria supervisor "reasonably necessary" to the operation of a religious college and, therefore, exempt. These employees performed "essential functions" for the school which necessitated their residence on the property. 218 Or at 37. In this case, although the caretakers' presence on the property is no doubt beneficial to the Foundation, it is not essential to the organization that they reside there and not elsewhere. The caretakers are not needed at that location to counsel people by telephone or to open the church when needed. Selling merchandise is not usually a 24-hour-a-day activity. We hold that the caretakers' residence is not eligible for an exemption from ad valorem taxation.

*South River Road*

This property of 6.15 acres includes a residence, a barn and a detached garage with a workshop. Roy Masters described it as a "[p]arsonage and staff quarters; [it] provides a place for staff to get away from students * * *." He called it a "retreat from the retreat." It was used during the assessment period as a temporary residence for the ministers and counselors on a rotating basis.

The Foundation claims that the property was essential to accomplish the religious objectives of the Foundation. Its primary use was to provide a refuge for the counselors where they could escape from the stress of their counseling work at the ranch.

In *German Apost. Christ. Church v. Dept. of Rev.,* 279 Or 637, 643, 569 P2d 596 (1977), we held that a minister's residence may be exempt if the location of the residence near the church is necessary to accomplish a religious objective, for example, to ensure the minister's constant availability to attend to the religious needs of the congregation. The Tax Court denied an exemption for the property in the instant case because it was located 20 miles from the ranch where those

needing counseling lived, a distance the Tax Court found too far.

■■   The proximity of the property may be one factor in determining whether the subject property is reasonably necessary to the religious activity at another site. In this case, however, the property does not fall within the exemption because of its use. It is not used so that counselors will be available to retreatants. Rather, it is used by the counselors as a respite from retreatants. The Foundation asserts that some residence away from the ranch is necessary in order that the counselors can perform their work well. This may be true. Nonetheless, the use of the property benefits the employees directly and the organization only indirectly. We find that the South River Road property is not reasonably necessary to accomplish the objectives of the Foundation.

*Tall Timber Ranch*

The ranch consists of 370.65 acres with improvements. The Foundation claims that the entire parcel is reasonably necessary to accomplish its religious purposes.

■   We have used a test of "reasonable necessity" when discussing ministers' or supervisors' residences connected with churchs or schools, *German Apost.* `Christ.` *Church v. Dept. of Rev., supra; Multnomah School of Bible v. Mult. Co., supra.* The test involves the relationship of one piece of property to another; when the property for which an exemption is sought is connected with and essential for the use of exempt property, we have extended the exemption from taxation. We have not considered, and decline to do so now, whether property may be exempt because it is "reasonably necessary" to carry out the overall goals of an exempt organization. The Foundation makes no claim that the ranch is required for the successful function of some other exempt property. We find no exemption on this ground.

The bulk of the ranch, 327.45 acres, is specially assessed for forest land. In order to be eligible for this special assessment, the land must be "held or used for the predominant purpose of growing and harvesting trees of a marketable species." ORS 321.257(2). When applying for this special assessment the taxpayer must state in its application for assessment that the land "is being held or used for the

predominant purpose of growing and harvesting trees of marketable species." ORS 321.358(2)(c). Though the Tax Court below was not concerned that the Foundation was claiming two different predominant uses for 327.45 acres of the ranch, in *Multnomah Co. v. Dept. of Rev.*, 6 OTR 325 (1976), the same issue was not so easily overlooked.[7] There, the Vedanta Society had applied for a special assessment for forest land in an apparent attempt to try any method to avoid full taxation. At the hearing before the Tax Court, however, the society repudiated its intent to grow trees for timber. Furthermore, the evidence indicated that harvesting the trees would violate the society's religious principles. The Tax Court stated:

> "The county is correct in saying that the statements made by the society in applying for the Small Tract Optional Tax directly contradicts its present position. The society never intended to hold the land for the 'predominant purpose of growing and harvesting trees.' That purpose is incompatible with 'actually and exclusively occupying the property' for charitable or benevolent work."

6 OTR at 333.

The Department below disallowed the ranch exemption because of this conflict. It found that the Foundation had already declared the primary use of most of its ranch acreage and that one predominant use must necessarily exclude another.

We agree with the *Multnomah Co.* decision that a stated predominant purpose of growing trees for a timber tax exemption is incompatible with actual and exclusive use of the

---

[7] The Tax Court acknowledged the special assessment but found it immaterial to its consideration of the present use of the property. It wrote:

"The court further notes that most of the lands in the property are specially assessed as forest lands. If the intent is to subsequently harvest trees thereon of a marketable species, that purpose would be incompatible with the exemption granted herein for the charitable use of the advancement of religion. Accordingly, upon harvesting, plaintiff would lose the exemption granted herein and suffer the consequences such would entail. See ORS 321.257 et seq., Western Oregon Forest Land and Severance Tax."

We disagree. The special assessment statute requires the taxpayer to declare the present, not future, predominant purpose of the land before qualifying for the special assessment. ORS 321.358(2)(c).

property for charitable work. We find nothing in the Foundation's brief or evidence to reconcile this conflict in the use of the property. Unlike the Vedanta Society, the Foundation has not repudiated its declared intent to use the specially assessed property predominantly for timber production. The exemption is denied for this land.

Roy Masters described the ranch as:

"A park-like sanctuary for spiritual and work therapy; a retreat for those who need to withdraw temporarily from the horrors of stress and family strife while they study, receive instruction, learn how to meditate and receive the benefits of both spiritual and work therapy. Living quarters provided for retreats [sic] and staff; evangelical materials available for use and sale; farms and outbuildings, fields and forest, are all used for the religious atmosphere necessary to dispel stress and to bring the retreats [sic] closer to God."

There is evidence that the portion of the ranch not specially assessed for forest uses, 45.20 acres, is used in some capacity in the Foundation's religious activities, which include work therapy, counseling, individual spiritual examination and meditation. The Department does not dispute that the Foundation's counseling work and work therapy are part of its religion. There is evidence that meditation and individual private spiritual examination in a rural environment are religious activities of the Foundation as well. Sufficient undisputed evidence exists in the record from which we can find that this portion of the ranch is devoted to religious activities. This portion of the ranch qualifies for exemption.[8]

In its brief on cross-appeal, the Foundation claims that no merchandise was sold at the ranch. Therefore, it argues, that portion of the Tax Court's ruling exempting all of

---

[8] While this case was under advisement, we decided *Golden Writ of God v. Dept. of Rev.*, 300 Or 479, 713 P2d 605 (1986), in which we denied exemption for property having similar physical attributes, for which the taxpayer sought exemption, contending that the trees, shrubs and other flora were part of the "tabernacle." We disallowed the exemption because the evidence did not justify a finding that discrete parts of the whole were entitled to exemption. Tall Timbers Ranch is not a loose communal farm as was the "tabernacle" in *Golden Writ of God*. Neither is the Foundation's ranch property *really an agricultural endeavor incidentally offering boarding space for potential converts*. The evidence in the instant case does justify allowing exemption for discrete parts of the ranch property. *See German Apost. Christ. Church v. Dept. of Rev.*, 279 Or 637, 569 P2d 596 (1977), illustrating that even a single building may be partly exempt and partly taxable.

the ranch save "that portion of the living quarters devoted to selling evangelical materials," *Foundation of Human Understanding v. Dept. of Rev., supra,* 9 OTR at 436, is incorrect. However, there is evidence from Roy Masters that "[e]vangelical materials are sold and distributed at the ranch." Any portion of the property used for the sale of merchandise would not be exempt.

■■■ In summary, we hold that the Evelyn Street property, except that portion used as a bookstore and a caretaker's residence, is exempt from taxation, and that portion of the ranch not specially assessed for forest uses is also exempt, except for that part used for the sale of merchandise. The South River Road property does not qualify for an exemption.

The judgment of the Tax Court is affirmed in part and reversed in part, and the case is remanded to the Tax Court.