IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

VEDANTA SOCIETY OF PORTLAND,　　　）
OREGON,　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　　Plaintiff,　　　　　　　）　　TC-MD 140420N
　　　　　　　　　　　　　　　　　）
　　　v.　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　）
MULTNOMAH COUNTY ASSESSOR,　　　）
　　　　　　　　　　　　　　　　　）
　　　　　　Defendant.　　　　　　　）　　**FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered on

May 26, 2015. The court did not receive a statement of costs and disbursements within 14 days

after its Decision was entered. *See* Tax Court Rule-Magistrate Division 16 C(1).

Plaintiff appeals Defendant's denial of property tax exemption for property identified as

Account R300249 (subject property) for the 2014-15 tax year. A trial was held in the Oregon

Tax Courtroom on February 9, 2015, in Salem, Oregon. Joseph D. McDonald, Attorney at Law,

appeared on behalf of Plaintiff. Swami Shantarupananda (Swami) and Dr. Terrance Hohner

(Hohner), Plaintiff's Vice President, testified on behalf of Plaintiff. Lindsay Kandra, Assistant

County Attorney for Multnomah County, appeared on behalf of Defendant. Karla Hartenberger

(Hartenberger), tax exemption specialist and appraiser, testified on behalf of Defendant.

Plaintiff's Exhibits 1 through 6 were received without objection. Defendant's Exhibits A and B

were received without objection.

## I. STATEMENT OF FACTS

The subject property consists of "a residential lot with an area of 7,483 square feet [that]

is improved by a single story house with a basement[.]" (Stip facts at 2.) The main floor of the

/ / /

subject property "has an area of 1,118 square feet * * *." (*Id.*) The subject property also includes a detached garage with an area of 322 square feet. (*Id.*)

The subject property is owned by the Vedanta Society of Portland. Swami testified that he belongs to the Ramakrishna Order of India. "[B]ranches of the Ramakrishna Order located outside India are generally known as Vedanta Societies[.]" (Ptf's Ex 5 at 1.) Swami testified that Vedanta Societies are located around the world and there are more than twenty located in the United States. (*see also id.*) Swami testified that Vedanta is one of the oldest religions in the world and is a type of reformed Hinduism that is universal, instead of based only on Indian culture and tradition. (*See also* Ptf's Ex 4 at 1.) Swami testified that the three principles of Vedanta are "the divinity of the soul," "the goal of human life is to manifest our divinity," and "[t]ruth is [o]ne." (*See id.*)

The parties agree that Plaintiff is a "religious organization" as that term is used in Oregon Administrative Rule (OAR) 150-307.140(1)(a). (Stip Facts at 1, ¶ 1.) Swami testified that he has been the spiritual leader for Plaintiff since 1991. Swami also testified that he is considered a monk because he does not take a salary from Plaintiff. Swami testified that Plaintiff currently has about 250 members; Plaintiff also has devotees, who are not members.

Swami testified that Plaintiff owns three properties: the subject property, the main temple in Portland, and a retreat in Scappoose. (*See* Ptf's Ex 6 at 3, 7.) Swami and Hohner both testified Plaintiff purchased the subject property, known as Holy Mother's House, in 1981. (*See id.* at 7.) Swami testified that other Vedanta Societies in the United States have a house similar to the subject property. Swami testified that the religion has no written doctrine or document requiring a house such as the subject property. Swami testified that the subject property was dedicated by Swami Aseshananda (Aseshananda), who is considered a holy man by Plaintiff.

Hohner testified that Aseshananda was "the last living disciple of Holy Mother" and that Plaintiff considers Holy Mother a "divine incarnation, equivalent to Christ in the Christian tradition." Hohner testified that as Aseshananda was getting older, more visitors were coming for holy company and to be initiated by him, so Aseshananda set up the subject property "as a spiritual refuge" for the visitors' "spiritual benefit."

Swami testified that someone has resided in the subject property since Plaintiff purchased it. Swami testified that the current caretakers residing at the subject property are husband and wife Toby Pollock (Pollock) and Miriam Poston (Poston). Hohner testified that Pollock and Poston have lived in the subject property since 2008. (*See also* Pollock Decl at 1.) Hohner testified that Pollock and Poston have no written contract with Plaintiff to stay in the subject property, "they do it out of their spirit of service." (*See id*. at 2.) Hohner testified that Pollock and Poston pay utilities, receive mail, and have infrequent visits from family members. (*See also id.*) Poston and Pollock do not host personal events, entertain friends, or have personal overnight guests. (*Id.*)

Swami described Pollock and Poston as pilgrims, testifying that they live at the subject property in order to live "deeply spiritual lives"; they "are exactly like monastics without taking formal vows," and "want to render their services" to the temple and to the guests visiting from around the world. Swami testified that the caretakers and guests participate in meditation, cut flowers for offerings, read and discuss scriptures, and watch religious movies. Swami testified that Plaintiff needs Pollock and Poston to reside at the subject property because Aseshananda dedicated the property and Plaintiff does not want it exposed to theft and vandalism.

Hohner testified that the main floor of the subject property consists of a shrine room, two guest bedrooms, the caretakers' bedroom, a kitchen, and a bathroom. (*See also* Ptf's Ex 1.)

Hohner testified that the guest bedrooms are used solely by Plaintiff's overnight guests.  He testified that the shrine room is the "essence of Holy Mother's House" and occupies the space that would be the living room in a typical house.  Hohner testified that the shrine room is not used for any "secular acts," instead it is used for a "spiritual purpose."  He testified the shrine room is used for meditation, spiritual readings, singing, and offering food, flowers, and service.  Hohner testified that the shrine room contains what is similar to an altar in the Catholic Church.  He testified that Aseshananda installed and dedicated the shrine, which includes pictures of Holy Mother and Swami Krishna.

Hohner testified that the basement consists of a bathroom, a music/storage room, a storage room for tools and supplies, a furnace/utility room, and a small office.  (*See also* Ptf's Ex 2.)  Hohner testified that the music/storage room is used by guests to watch religious videos and is used by Pollock to compose music used in Plaintiff's worship services.  Hohner testified that the small office is used by Poston for faxing and computer work.  Hartenberger testified that the caretakers used the small office for personal use, not for conducting Plaintiff's business.

Hohner testified that the subject property also has a combination garden shop and garage where Poston parks her car.  (*See also* Ptf's Ex 3.)  He testified that the yard has apples and vegetables used as food for guests and as offerings in the temple.  (*See also id.*)  Hohner testified that the yard has roses planted by Aseshananda and devotees.  He testified that "Holy Mother loved flowers - especially roses";  the subject property's roses have "significance to the worship [] in the shrine room," where they are offered every day they are flowering and are also used at the main temple and the Scappoose retreat.  A photo of the shrine room shows multiple roses lying on top of the shrine.  (Def's Ex A at 2.)  Hohner testified that guests weed the garden, which is considered "karmic yoga."

Swami testified that even though the subject property looks like a house, he does not call it a house; instead, he calls it a "place of pilgrimage," a "religious retreat," and a "center of worship." Swami testified that the subject property is used by members for "holy company," which occurs once a month and involves meditation, scripture reading, singing, and a question and answer session. Swami testified that holy company is also known as "teacher and student relations" and is "the most important part of Eastern mysticism."

Swami testified that only members and devotees can stay at the subject property and those guests come from all over the world to stay at the subject property and provide service. Hohner testified that from February 11, 2014, to January 19, 2015, 13 overnight guests stayed at the subject property. He testified that guests usually stay for up to a week. Swami testified that the guests can afford to stay at hotels, but choose to stay at the subject property because they prefer the austerity and want to experience the "ambiance of the spiritual vibrations." Swami testified that visiting swamis stay at the main temple, but also visit the subject property. Hohner testified that eight swamis made pilgrimages from India to the subject property in 2014.

Defendant exempted a portion of the subject property beginning with the 1982-83 tax year. (Stip Facts at 2.) Hartenberger testified that the subject property should not be partially exempt because she believes its primary use is residential. She testified that she performed an "analysis based on use." Hartenberger identified the shrine room and two guest bedrooms "as possibly having exclusive [religious] use." (Def's Ex A at 1.) She testified that she "came up with approximately sixty-five percent for residential use and thirty-five percent" for religious use. (*See id.*) Hartenberger testified that she also calculated primary use based on "the amount of time—frequency—that they used the [subject] property." She testified that the subject

/ / /

property was used one week per month for religious use and she concluded "residential use was 76.92 percent and religious use was 23.08" percent. (*See id.*)

## II. ANALYSIS

The issue presented in this case is whether the subject property should be exempt from property taxation under ORS 307.140.[1] That statute exempts from taxation:

> "(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property."

ORS 307.140.

Exemption statutes are strictly but reasonably construed. *German Apost. Christ. Church v. Dept. of Rev.* (*German Apost. Christ. Church*), 279 Or 637, 640, 569 P2d 596 (1977). "Strict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." *Id.*, quoting *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 291, 502 P2d 251 (1972). "In close cases, exemptions must be denied." *Washington Co. Assessor II v. Jehovah's Witnesses* (*Wash. County Assessor II*), 18 OTR 409, 422 (2006). "The burden is upon the taxpayer to prove that a claim of exemption meets the statutory requirements." *Golden Writ of God v. Dept. of Rev.*, 300 Or 479, 483, 713 P2d 605 (1986); *see* ORS 305.427.

The Oregon Supreme Court established a two-part test to determine whether a religious organization's property is exempt from taxation under ORS 307.140. *German Apost. Christ. Church*, 279 Or at 642. The first part of the test is "if the charitable use is the advancement of

_____

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

religion, then such use must be primarily for the benefit of the church * * *." *Id.* In order to primarily benefit the church, "the primary use of the property must advance charitable purposes or goals of the religious organization." *Id.* The Regular Division of this court observed that "those cases holding property exempt involved situations in which the property was used primarily or essentially for religious objectives, with only incidental benefit to the persons using the property." *Washington Co. Assessor II*, 18 OTR at 418.

The second part of the *German Apost. Christ. Church* test is that the religious use of property be "reasonably necessary for the furthering of the religious aims of the church." *German Apost. Christ. Church*, 279 Or at 642. The Regular Division of this court determined that, under the second part of the test, "cases fall into two categories: those cases involving residences and those not involving residences." *Washington Co. Assessor II*, 18 OTR at 418. In cases not involving residences, "so long as the use of the property related primarily to church business, the property was held exempt." *Id.* (Citations omitted.) In cases involving residences, the properties "have been held exempt only when two requirements are met": (1) "the official living in the residence must be required to live there by either church doctrine or practical necessity[;]" and (2) "the proximity of the residence to the house of worship must be necessary to further religious objectives." *Id.* at 418-19.

The fact that the subject property is a residential structure is not dispositive as to whether it was a "residence" within the meaning of *Washington Co. Assessor II*. *See, e.g., Christian Meeting Place v. Washington County Assessor*, TC-MD No 021173C, WL 22119848 at *4 (Sept 2, 2003) (holding exempt a residential structure that was used exclusively for qualifying religious activities, but noting that "[t]he result would likely be otherwise * * * if one or more church

/ / /

members were living on the property"). Thus, the court's focus is on the use of the subject property rather than the fact that it is a residential structure.

A.      *Whether the Subject Property Was Used Primarily for the Benefit of Plaintiff*

The first question is whether all or parts of the subject property were used primarily for Plaintiff's benefit.

Swami described the subject property as a "religious retreat"; thus, cases involving religious retreats provide helpful comparisons. In *Found. of Human Understanding v. Dept. of Rev.*, 301 Or 254, 266 (1986), a ranch was used as a retreat to provide "religious activities, which include work therapy, counseling, individual spiritual examination and meditation." In that case, the court also examined two other parcels of land owned by the organization: (1) several acres containing "a residence, barn, and detached garage with workshop[,]" and (2) a church with a caretaker's residence. *Id*. at 256-57. The Oregon Supreme Court held that the ranch was exempt from taxation, except for the portions used for the sale of merchandise and specially assessed for forest uses. *Id.* at 267. In the same case, a property "used by the counselors as a respite from retreatants" was not exempt from taxation because it benefitted "the employees directly and the organization only indirectly," thus failing the first part of the test. *Id.* at 264.

In a case where this court held a church camp exempt from taxation, the court found that "[t]here is ample evidence that meditation and individual private spiritual examination in a rural environment are religious activities of the Camp." *Church of the Brethren v. Coos County Assessor* (*Church of Brethren*), TC-MD No 990512D, WL 33117384 at *3 (Dec 17, 1999). This court concluded "that such activities are sufficient to qualify property for exemption." *Id.*, citing *Found. of Human Understanding*, 301 Or at 266.

/ / /

In the present case, the shrine room was used exclusively by Plaintiff's members and devotees for religious activities including meditation, group and individual spiritual examination, reading and discussing scriptures and sharing holy company with visiting swamies. In 2014, eight swamis visited the shrine room. Those are the same types of activities that took place and qualified properties for exemptions in *Found. of Human Understanding* and *Church of Brethren*. The court concludes that the shrine room was used primarily to advance Plaintiff's religious objective.

The two guest bedrooms were used exclusively by members and devotees who visited the property to participate in religious activities. Hohner testified that, in 2014, 13 guests stayed overnight at the subject property. In addition, he testified that the caretakers had no personal overnight visitors to the subject property. That use by members and devotees shows the primary use of the guest bedrooms was for the benefit of Plaintiff, not for the personal benefit of the caretakers.

The rose beds in the subject property's yard were planted by devotees and Aseshananda. In addition, the roses were used as offerings at Plaintiff's shrines. The court is persuaded that the primary use of the rose beds was for Plaintiff's religious purposes; therefore, the rose beds meet the first part of the *German Apost. Christ. Church* test.

The remaining parts of the subject property were not used exclusively for religious purposes. Instead, they were used exclusively or partially for residential purposes by the caretakers. The master bedroom and office were used exclusively by the caretakers. The remaining parts of the subject property -- the kitchen, bathrooms, other basement areas, and garage -- were used by both the caretakers and Plaintiff's guests. Plaintiff bears the burden of proving by a preponderance of the evidence that those parts of the subject property were used

primarily for religious purposes rather than for personal purposes by the caretakers. Plaintiff did not meet its burden of proof with respect to those parts of the subject property. Moreover, those parts of the subject property were used as a residence by the caretakers and must, therefore, meet the additional two-part test for residences under *Washington Co. Assessor II*, 18 OTR at 418-19. That test is discussed in Section C below.

B.      *Whether Religious Use of Subject Property was Reasonably Necessary to Further Plaintiff's Religious Aims*

The second part of the *German Apost. Christ. Church* test is that the religious use of property be "reasonably necessary for the furthering of the religious aims of the church." *German Apost. Christ. Church*, 279 Or at 642. For the second part of the test, the Regular Division of this court observed that in cases not involving residences, "so long as the use of the property related primarily to church business, the property was held exempt." *Washington Co. Assessor II*, 18 OTR at 418.

The parts of the subject property that passed the first part of the test also pass the second part of the test. The shrine room is reasonably necessary to further Plaintiff's religious aims because the shrine room facilitates religious activities, including holy company and meditation, which are central to Plaintiff's religion. The guest bedrooms are reasonably necessary to further Plaintiff's religious aims because they enable devotees visiting the retreat to be fully immersed in the "spiritual vibrations." The rose beds are reasonably necessary to further Plaintiff's religious aims because the offerings of roses are significant to worship at Plaintiff's shrines.

C.      *Parts of the Subject Property Used as a Residence*

The remaining parts of the subject property were used partially or exclusively for residential purposes by the caretakers. The first requirement of the residence sub-test is that "the

official living in the residence must be required to live there by either church doctrine or practical necessity." *Washington Co. Assessor II*, 18 OTR at 419 (citations omitted). Swami testified that the religion does not require such a residence and Hohner testified that Plaintiff has no written contract with Pollock and Poston requiring them to reside at the subject property. Thus, Plaintiff presented no evidence of church doctrine requiring residence at the subject property.

In regard to practical necessity, Swami testified that caretakers are needed to deter theft and vandalism. However, the Parsonage and Caretaker Residence Exemption Guidelines state that "[l]iving close to the church to deter vandalism[]" does "not qualify the residence for an exemption[.]" OAR 150-307.140(4)(2)(a). Plaintiff has overnight guests at the property an average of one time per month. Although it may be helpful that the caretakers reside at the subject property when guests are there, it is not a practical necessity for the caretakers to reside at the subject property. Therefore, the parts of the subject property not primarily used for religious purposes fail to meet the first requirement of the residence sub-test.

Because Plaintiff must satisfy both prongs of the residence sub-test, Plaintiff's failure to meet the first requirement of the test necessarily excludes it from qualifying for property tax exemption. As a result, the court need not address the second requirement.

D.    *Partial Exemption*

There are cases where a residence failed the two-part test, but a portion of the residence was still found to be exempt. *See Washington Co. Assessor II*, 18 OTR at 419 ("county concedes that the office located within the residence is exempt under ORS 307.140 because it was reasonably necessary and primarily used to advance church purposes"); *Washington County v. Dept. of Rev.*, 11 OTR 251, 252 (1989) (pastor's study was used continuously for church

purposes and was exempt from taxation); *German Apost. Christ. Church*, 279 Or at 644 ("the Tax Court was correct in allowing an exemption for the office room in the Administrating Elder's residence but disallowing further exemption"). Those cases are in accordance with the conclusion reached here that the subject property's shrine room, guest bedrooms, and rose beds are exempt from taxation. Those parts of the subject property were primarily used for the benefit of Plaintiff and were reasonably necessary to advance Plaintiff's religious purposes. The remaining parts of the subject property were used either exclusively or primarily for residential purposes and only incidentally benefited Plaintiff. They were not reasonably necessary to advance Plaintiff's religious purposes.

### III. CONCLUSION

After careful consideration, the court concludes that the following parts of the subject property are entitled to property tax exemption under ORS 307.140 for the 2014-15 tax year: the shrine room, the two guest rooms, and the rose beds. The remaining parts of the subject property are subject to taxation. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of Defendant's denial of property tax exemption for property identified as Account R300249 for the 2014-15 tax year is granted in part. The shrine room, the two guest bedrooms, and the rose beds are entitled to property tax exemption. The remaining parts of the subject property are not entitled to exemption.

Dated this ____ day of June 2015.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on June 12, 2015.*