Mark PERKINS et al,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*
*and*

MULTNOMAH COUNTY,
*Intervenor-Defendant.*

(TC 4526)

Oral argument on cross motions for summary judgment was held July 1, 2001, in the courtroom of the Oregon Tax Court, Salem.

Gary Shepherd and William C. Cox, Portland, argued the cause for Plaintiffs (taxpayers).

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, filed an Answer, but did not argue the cause for Defendant (the department).

John S. Thomas, Multnomah County Assistant County Counsel, Portland, argued the cause for Intervenor-Defendant (the county).

Decision rendered for Plaintiffs September 19, 2001.

### CARL N. BYERS, Senior Judge.

Plaintiffs (taxpayers) appeal a magistrate decision upholding the action of the Multnomah County Assessor. The assessor issued a "corrected" tax statement; retroactively denying a property tax exemption for the 1999-2000 tax year. Intervenor-Defendant Multnomah County (the county) intervened to defend the assessor's actions. The parties have stipulated the facts and submitted the matter to the court on cross-motions for summary judgment.

### FACTS

Although the parties stipulated to some facts, not all the necessary facts have been stipulated. However, it appears there is no dispute as to the additional necessary facts gleaned from the record.

The subject property is a vacant lot located near the old Gresham Elks Lodge (the Elks). The Elks acquired the property in 1986 as a future site for a new lodge. Until construction commenced, the Elks used it as a soccer field for youth groups, a jogging area, a picnic area, and a recreation area for other social activities of its members. The Elks applied for a property tax exemption in January 1987. The assessor granted exemption on the basis of the interim uses.

In November 1998, the Elks decided to construct a new lodge and gave notice to the soccer club to discontinue use of the property. However, within a relatively short time, the Elks realized that it could not afford a new lodge. It ceased construction activity and eventually filled in the foundation excavations. On March 31, 1999, the Elks listed the property for sale. Taxpayers agreed to buy the property and on June 30, 1999, the Elks signed a deed and placed it in escrow. On July 2, 1999, the sale closed and title transferred to taxpayers.

## ISSUE

Was the property exempt from taxation on July 1, 1999, and therefore exempt for the remainder of the 1999-2000 tax year?

## ANALYSIS

ORS 311.410(1)[1] provides:

"Real property or personal property which is subject to taxation on July 1 shall remain taxable * * * notwithstanding any subsequent transfer of the property to an exempt ownership or use. * * * Real or personal property exempt from taxation on July 1 shall remain exempt for the ensuing tax year, notwithstanding any transfer within such year to a taxable ownership or use."

There can be no real dispute that the property in this case was actually transferred to a taxable ownership, *i.e.*, taxpayers, on July 2, 1999. Therefore, if the property was exempt on July 1, it remained exempt for the rest of the 1999-2000 tax year.

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes are to 1997.

■     ORS 307.136(1) exempts property from taxation that is owned by a fraternal organization and which is "actually occupied or used in fraternal or lodge work or for entertainment and recreational purposes." Although ORS 307.134(1) defines a "fraternal organization" in general terms, subsection (2) identifies the Benevolent and Protective Order of Elks by name as one of the fraternal organizations intended by the legislature to be included.

Therefore, there is no question that the Elks qualified as to ownership for purposes of the exemption. There is also no question that prior to the 1999-2000 tax year, the property qualified by use and was granted property tax exemption. Advocating for exemption, attorney Michael Sommers, a member representing the Elks, wrote a letter dated May 25, 1989, that indicates the property, while intended for a future building site, was actually used for soccer, jogging, and picnicking. It appears that the exemption was granted on that basis.

■■     ORS 307.162(1) provides that before a property may be exempt under ORS 307.136(1), the organization claiming the exemption must file a statement with the county assessor showing the purposes for which the property is used. Subsection (a) then provides:

> "If the ownership *and use* of all property included in the statement filed with the county assessor for a prior year remain unchanged, a new statement shall not be required."[2] (Emphasis added.)

The legislature clearly intended that if ownership *or* use changes, the organization must file a new statement. Under the statutory scheme, if the ownership or use changes after April 1 but before July 1, the organization must file a new statement within 30 days from the date of the change. If a change occurs after July 1, the status of the property as of July 1 remains the same.

The facts in this case, therefore, raise the question of whether listing the property for sale is a new use that

---

[2] The 1999 Legislature amended ORS 307.162(1)(a) by removing the words "and use." However, that amendment was first made effective for tax years beginning on or after July 1, 2000. *See* Or Laws 1999, ch 398, §§ 9, 10(2).

required the Elks to file a new statement. The property was listed for sale on March 31, 1999. Based on the Stipulated Facts, no other use was made of the property from that date until July 1, 1999. The prior uses qualifying the property for exemption such as the youth soccer club, jogging, and picnicking did not take place. In fact, the foundation excavations were not filled in until "around March 2000." Thus, no soccer would have been allowed until long after the July 1 date involved.

In *Willamette Univ. v. Tax Com.*, 245 Or 342, 422 P2d 260 (1966), the Supreme Court held that property under construction as of the assessment date qualified as "actually and exclusively occupied or used" by its exempt owner. *See* ORS 307.130(1). While the court recognized that the property was in fact only being "prepared" to be used for the exempt purposes, the court found that such use was within the legislature's intent. *Willamette*, 245 Or at 349. Later, in *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972), the Supreme Court refused to extend the *Willamette* ruling and held that vacant property being held for future use did not qualify for exemption. In both cases, the court was construing ORS 307.130 and followed the traditional "strict but reasonable construction" approach. Here, the court must discern the intent of ORS 307.136 by following the analytic format set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).

The wording of ORS 307.136 is very similar to that construed in *Willamette* and *Eman. Luth.* except for the use of "exclusively," a condition not imposed upon fraternal organizations. Although the Elks started the process of constructing a new lodge, that effort was abandoned by March 31, 1999. Consequently, as of that date, the property was neither used nor occupied by the Elks. Unlike the organization in *Eman. Luth.*, which anticipated using its property in the future, by holding its property for sale the Elks anticipated no use, either present or future. The court concludes that merely holding property for sale does not constitute actually using the property within the meaning of ORS 307.136. Therefore the subject property was not actually occupied or used by the Elks from March 31, 1999 through July 1, 1999.

Under ORS 307.162(1)(a), the Elks was required to notify the assessor in writing that the use of the property had changed. Because that change occurred before April 1, 1999, the Elks was obligated under the provisions of ORS 307.162 to file a new statement with the assessor within 30 days of that change. It is apparent that no new statement was filed. Therefore, the property was not entitled to an exemption as of July 1, 1999.

That conclusion leads to a second issue, whether the assessor can deny the exemption merely by sending taxpayers a "corrected" tax statement. The parties have stipulated that taxpayers were issued a tax statement dated October 19, 1999, indicating that the property was exempt. On November 29, 1999, the assessor issued a "corrected" tax statement indicating that the property was no longer tax exempt and assessing taxes in the amount of $4,659.63.

ORS 308.242(1) provides that "[t]he assessor shall make no changes in the roll after September 25 of each year except as provided in subsections (2) and (3) * * *." Neither of those subsections applies in these factual circumstances. Therefore, the assessor had no authority to simply change the assessment and tax roll.

■ ORS 311.205 through ORS 311.223 do provide a procedure by which an assessor or tax collector may correct certain errors in the roll. This court has previously held that granting a taxpayer a tax exemption in error is correctable under *former* ORS 311.207(1), *renumbered as* ORS 311.216(1) (1997). *Freightliner Corp. v. Dept. of Rev.*, 5 OTR 270 (1973).[3]

■ ORS 311.205(1)(b) prohibits the assessor from correcting an error in valuation judgment but authorizes the assessor to correct "any other error or omission of any kind." Further, ORS 311.205(3) provides, in part, that the correction "shall be made in whatever manner necessary to make the assessment, tax or other proceeding regular and valid."

---

[3] The court made that ruling in sustaining a demur to the taxpayer's complaint. After the taxpayer filed an amended complaint, the court held in favor of the taxpayer on a constitutional claim that was reversed on appeal to the Supreme Court. *See generally Freightliner Corp. v. Dept. of Rev.*, 6 OTR 70 (1975), *rev'd* 275 Or 13, 549 P2d 662 (1976).

However, if such correction increases the assessment, unless ordered by the Department of Revenue, the assessor must follow the procedure set forth in ORS 311.216 to ORS 311.232. Those statutes require the assessor to provide notice to the taxpayer of intent to add the omitted property to the roll and an opportunity for the taxpayer to appear at a specified time to show cause why the property should not be added to the roll.

Taxpayers contend that the correction procedures do not apply here because ORS 311.206(2) (1999) provides:

"Notwithstanding subsection (1) of this section or other provision of law establishing the delinquency date for additional taxes, additional taxes may not be assessed or imposed if the correction is a result of:

"(a) The disqualification of property from a tax exemption granted erroneously by a tax official; or

"(b) The failure of a tax official to timely disqualify property from a tax exemption."

However, taxpayers stopped their analysis too soon.[4] Subsection(3) clearly provides that the exemption in subsection (2):

"* * * does not apply to a failure by a tax official to timely disqualify property from a tax exemption *if the property owner fails to timely notify the assessor of a change in use of the property to a nonexempt use.*" (Emphasis added.)

■     In summary, the Elks was required to notify the assessor in writing within 30 days of the change in use of the property. Because it failed to do so, the property was not entitled to exemption as of July 1, 1999. However, the assessor's act of merely issuing a "corrected" tax statement was ineffective. ORS 311.219 requires the assessor to give the taxpayer notice and opportunity to show cause. Because that was not done, the corrected tax statement was invalid and of no effect.

---

[4] Taxpayers may view the facts as an erroneously granted exemption. The court believes it is clearly a situation where the assessor failed to timely disqualify property from exemption.

The county contends that it met the substantive requirements of ORS 311.219 and even if it did not, it complied with the alternative procedure in ORS 311.208(1). That statute authorizes a correction if:

"(a)   A correction is made that applies only to the current roll;

(b)   The correction is made after roll certification under ORS 311.105 and prior to December 1 of the current tax year; and

"(c)   The correction increases the value of the property."

The county claims that by complying with that statute, which it did, it need not comply with the requirements of ORS 311.219, which it did not.

The county's reliance on ORS 311.208 is misplaced. The action taken by the assessor did not increase the value of taxpayers' property, but changed the property's taxable status. Corrections made under ORS 311.208 are limited to increases in value. As the county recognizes, the statute was enacted as part of the legislation implementing Measure 50, which dealt with real market value and maximum assessed value. Also, ORS 311.208 expressly provides for appeals from the assessor's correction to the board of property tax appeals (BOPTA). BOPTA has jurisdiction to hear valuation appeals, but has no jurisdiction to determine whether property is exempt.

Having determined that the corrected tax statement was void and of no legal consequence, the court must order restoration of the property to exempt status and cancellation of the assessed taxes. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that Intervenor-Defendant's Motion for Summary Judgment is denied. Costs to neither party.