IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

FULL CIRCLE FAMILY CHURCH,      )
                                )
            Plaintiff,          )      TC-MD 150080D
                                )
      v.                        )
                                )
BENTON COUNTY ASSESSOR,         )
                                )
            Defendant,          )      **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered August 21, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. See TCR MD 16 C(1).

Plaintiff appeals Defendant's denial of Plaintiff's request for exemption from ad valorem taxes for property identified as Accounts 203970 and 203988 (subject property) for the 2014-15 tax year. A trial was held in the Oregon Tax Courtroom on June 2, 2015. Allan "Chris" Burns (Burns) and Nancy "Llyn" Peabody (Peabody) appeared and testified on behalf of Plaintiff. Jenny Anderson (Anderson) appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 27 and Defendant's Exhibits A through Q were received without objection.

I. STATEMENT OF FACTS

Peabody testified that the subject property is 3.5 acres with structures including an "1875 farmhouse and three greenhouses" and noted that one greenhouse is currently under construction. She testified that Plaintiff filed an application with Defendant seeking property tax exemption for 3 acres and all of the structures because Plaintiff is a "religious organization." (*See* Ptf's Compl at 2-3.) Defendant denied Plaintiff's application because "[t]he primary purpose of [Plaintiff] is

to demonstrate the efficacy of sharing; the primary use of the property appears to be a residence not a house of public worship." (Def's Answer at 1.)

Peabody testified that after reviewing "I[nternal] R[evenue] S[ervice] information," she and Burns were "lead to apply" as a qualifying religious organization under "ORS 307.140." Peabody testified that Plaintiff was "registered by the State of Oregon, Secretary of State, Corporation Division" (Corporation Division) as a nonprofit religious corporation in 2010 and the Sharing Gardens registered with the state Corporation Division in 2011. (*See* Ptf's Ex 26 at 2-3, 5.) Peabody testified that, due to an oversight, she failed to renew the Sharing Gardens' registration with the Corporation Division. (*See* Def's Ex D at 1-2.)

Burns testified that Plaintiff was founded in 2010 to demonstrate the "principle of generosity," and that the Sharing Gardens are the "foundation of its religious beliefs." (*See* Ptf's Ex 26 at 2; Ptf's Ex 3 at 1-4; Def's Ex B at 1; Def's Ex I at 1-4.) He testified that Plaintiff "was formed for the purposes of demonstrating the efficacy of sharing." (*See* Ptf's Ex 3 at 1.) Burns testified that Plaintiff is a "faith supported ministry," that exists without "government grants" and "commercial activity." (*See* Ptf's Ex 3 at 1-2.)

Burns and Peabody testified that the Sharing Gardens were started in 2009 at another location. Peabody testified that the Sharing Gardens moved to the subject property in 2010. Peabody testified that the Sharing Gardens produced over 3,000 pounds of produce in 2010 and over 4,400 pounds in 2011. Peabody testified that over 6,000 pounds were produced in 2012, and that production has increased in subsequent years. (*See* Ptf's Ex 5 at 1.) Plaintiff's Exhibits 7 through 25 were written testimonials from individuals who volunteered at the Sharing Gardens, food banks that received produce grown at the Sharing Gardens, or third-parties who worked with Plaintiff to develop the Sharing Gardens. (*See* Ptf's Ex 7-25.) Burns testified that the

Sharing Gardens are part of the Oregon State University (OSU) service learning program. He explained that during the academic year six OSU students spend four to five hours a week assisting with the operational needs of the Sharing Gardens.

Burns testified that the "house and gardens are one integral operation." He testified the subject property does not have a "traditional house of public worship." Burns testified that "traditional worship—going to church, sitting in a pew, and listening to a sermon—is not how [Plaintiff's] full members worship." Burns testified that a "full member" worships by participating in "acts of service." Burns testified that he and Peabody are Plaintiff's only "full members" and they "worship by working in the Sharing Gardens." (*See* Def's Ex J at 2.) Burns referred to the following excerpt from Plaintiff's bylaws:

> "1. There is one God, the Eternal, the only Being; God is One with the Universe; nothing else exists but God therefore God is in each of us.
>
> "2. All people are members of one human family, regardless of skin color, cultural heritage or nationality and each person is entitled to share equitably in the gifts of the Creation.
>
> "3. We seek guidance through observing the ways of Nature/Creation. Its wisdom and knowledge is accessed through the writings of the world's faith traditions and through direct revelation to those who seek sincerely.
>
> "4. We look beyond the differences expressed through the World's religions to the common threads that unite us all as the children of a loving God.
>
> "5. We believe in the Law of Love, which is revealed through practicing forgiveness and through deeds of kindness and service.
>
> "6. We live to express gratitude for the One Creation.
>
> "7. Our place of worship is wherever we are, performing acts of service without thought of personal gain."

(Ptf's Ex 27 at 2.) Peabody testified that Plaintiff's bylaws require full members to hold "all things" in common, which "includes living space." (*See* Ptf's Ex 27 at 2, 5.)

Peabody testified that she and Burns moved to the subject property in 2014. Burns testified that after he and Peabody began to renovate the farmhouse for the Sharing Gardens' storage they realized it could be their residence and allow them to be present at all times to care for the Sharing Gardens. Burns testified that living on the subject property allows him to light a fire in the greenhouses at night during cold weather to ensure that the tomatoes would not freeze. In response, Anderson testified that there were "alternatives" that did not require Burns's presence onsite, including "covering the plants in plastic bags" to protect them.

Burns testified that one of the rooms in the farmhouse is used as an office and to maintain Plaintiff's and the Sharing Gardens' websites from that room. Peabody testified that the websites "receive over 8,000 hits" collectively each month.[1] Burns stated that meetings are held Mondays, Thursdays and Saturdays in the farmhouse before or after volunteer sessions, including question and answer periods or demonstrations. Peabody stated that the kitchen was used for "healthier food choice" cooking and canning demonstrations. She testified that the farmhouse bathroom was used by the volunteers.

Anderson testified that the subject property did not qualify for exemption because there is a "lack of proof that the subject property is used for the advancement of religious purposes." Anderson testified that she agrees with Burns that the subject property does not have a "traditional house of worship," but disagrees that there was any religious activity sufficient to qualify the subject property for exemption. Anderson testified that the church across the street from the subject property displayed easily visible signs stating religious service times. (*See* Def's Ex O at 5.) She testified that the subject property did not have similar signs, nor did she observe any religious activity occurring on the subject property when she visited. (*See id.* at 1-

---

[1] Peabody did not say whether these were unique hits, or whether it was multiple hits from a smaller pool of visitors.

5.) Anderson testified that she scheduled her site visit when volunteers would not be working in the Sharing Gardens, so she would have a "better view" of the subject property.

Anderson testified that there was "charity occurring on the subject property due to the operation of the Sharing Gardens," but the Sharing Gardens' operation was not indicative of "any religious services on the subject property." Anderson concluded that the farmhouse did not meet the minimum criteria for exemption under OAR 150-307.140(1)(c), which states: "The property for which a religious organization claims an exemption must be reasonably necessary to accomplish the religious objectives of that organization." (*See* Def's Ex H at 1.) Anderson testified that she believed it was "convenient" for Burns and Peabody to live on the subject property rather than "necessary." Anderson noted that the Sharing Gardens was "established in 2010, and had been flourishing without the presence of Plaintiff's full members 24 hours a day, seven days a week."

## II. ANALYSIS

Plaintiff applied for an exemption under ORS 307.140, which provides exemptions from ad valorem taxes for property owned or purchased by religious organizations.[2] ORS 307.140 states in pertinent part:

> "Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:
>
> "(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property."

---

[2] The court's references to the Oregon Revised Statutes are to 2013.

Exemption statutes like ORS 307.140 are strictly but reasonably construed. *German Apost. Christ. Church v. Dept. of Rev.* (*German Apost. Christ. Church*), 279 Or 637, 640, 569 P2d 596 (1977). "Strict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." *Id.*, quoting *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 291, 502 P2d 251 (1972). "In close cases, exemptions must be denied." *Washington Co. Assessor II v. Jehovah's Witnesses* (*Washington County Assessor II*), 18 OTR 409, 422 (2006). "The burden is upon the taxpayer to prove that a claim of exemption meets the statutory requirements." *Golden Writ of God v. Dept. of Rev.* (*Golden Writ of God*), 300 Or 479, 483, 713 P2d 605 (1986); *see* ORS 305.427.

A.      *Is Plaintiff a religious organization?*

The statutory exemption provided by ORS 307.140 is only available to "religious organizations." In this case, the first question is whether Plaintiff is a religious organization within the meaning of ORS 307.140.

In interpreting ORS 307.140, the court looks to the leading case on statutory interpretation, *PGE v. Bureau of Labor and Industries* (*PGE*), 317 Or 606, 859 P2d 1143 (1993). "In interpreting a statute, the court's task is to discern the intent of the legislature." *Id.* at 610. The legislative intent is to be determined first from the text and context of the statute. *Id.* at 611. The context of a statue includes prior constructions of that statute by the Oregon Supreme Court. *Polacek and Polacek*, 349 Or 278, 284, 243 P3d 1190 (2010). "[A]fter examining text and context," the court may consider legislative history that "appears useful to the court's analysis." *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009). Additionally, "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. "In

the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." ORS 174.010.

If a definition was provided by the legislature, then that definition is used; when a definition was not provided, the plain meaning of the statute's text must be determined. *Comcast Corp v. Dept. of Rev.*, 356 Or 282, 295, 357 P3d 768 (2014). To do this, dictionary definitions are used as they reflect what the legislature intended the text to mean. *Id.* at 296.

The exemption for "houses of public worship" found in ORS 307.140 has existed since the first laws of Oregon. *See* General Laws of Oregon, Gen Laws ch LIII, title I, § 4, p 894 (Deady 1845-1864). However, the words "religious organizations" were added to the statute in 1945 without definition. Or Laws 1945, ch 296, §1. Because religious organizations were not defined by the legislature, the dictionary definition will be used to determine the legislative intent of the words. Religious is defined as "[o]f or pertaining to religion or religions; concerned with religion * * * as, a religious society." [3] *Webster's Second New Int'l Dictionary* 2105 (unabridged ed 1934). Organization is defined as "[t]hat which is organized * * * an association of persons, as in a club." [4] *Id.* at 1719.[5] Using those definitions, ORS 307.140 does not solely apply to traditional organized religions, but includes any group that operates in a way pertaining to a religion or religions.

---

[3] The third definition offered by Webster's Second New International Dictionary is the appropriate one in this context because it is used in relation to groups of individuals rather than an individual.

[4] The third definition offered by Webster's Second New International Dictionary for the definition of organization is most appropriate because it is used in the context of a group of individuals rather than a process or structure.

[5] A 1945 edition of Webster's Second International Dictionary was not found. Two editions, 1934 and 1952, were consulted. In each edition, the religious and organization definitions were the same.

The Oregon Supreme Court has recognized that a non-traditional religious organization may qualify for exemption under ORS 307.140, and the court has avoided the critical examination of non-traditional religious views. *See Golden Writ of God*, 300 Or at 608 (declining to "step into the controversial thicket" of examining whether the legislature meant to exempt unconventional religious groups); *Found. of Human Understanding v. Dept. of Rev.*, (*Found. of Human Understanding*) 301 Or 254, 267, 722 P2d 1 (1986) (upholding some property tax exemptions for non-traditional religious organization.)

In *Foundation of Human Understanding v. Department of Revenue*, this court rejected the defendant's challenge to "the religious nature of [the] plaintiff's activities[.]" 9 OTR 429, 431 (1984) *rev'd in part, aff'd in part* 301 Or 254 (1986). The court noted that "[m]an's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views." *Id.* at 431 (quoting *U.S. v. Ballard*, 322 US 78, 64 S Ct 882 (1943)) (internal quotation marks omitted).

In this case, Plaintiff has been registered as a nonprofit religious corporation with the Corporation Division since 2010. (Ptf's Ex 26 at 2.) Plaintiff was founded on Christian principles of generosity tied to Bible teachings. (Ptf's Ex 3 at 1-2.) Plaintiff's beliefs and tenets were influenced by Taoist and Buddhist teachings. (*Id.* at 2.) Modern religious philosophers contributed to Plaintiff's religious beliefs. (Def's Ex I at 1-2.) Those influences can be found in Plaintiff's bylaws, which state the spiritual beliefs of the organization. (Ptf's Ex 27 at 2.) Those spiritual beliefs are evidenced in Plaintiff's operation of the Sharing Gardens, which annually produces thousands of pounds of produce that is given away to organizations feeding the local community. The Sharing Gardens exemplifies Plaintiff's underlying belief of generosity and demonstrates the "efficacy of sharing." (Ptf's Ex 3 at 1.)

The absence of signs on the subject property informing the public of service times for working in the Sharing Gardens (which is Plaintiff's method of "worship") does not detract from Plaintiff's status as a religious organization. Plaintiff provided evidence that it spreads the word of its beliefs on its websites and provided substantial evidence of the community's awareness of, and appreciation for, the Sharing Gardens. The court therefore concludes that Plaintiff is a religious organization.

B.    *Does Plaintiff qualify for an exemption under ORS 307.140?*

Having determined that Plaintiff is a religious organization, the next issue is whether Plaintiff's subject property qualifies for exemption.

ORS 307.140 exempts property that is used by a religious organization "solely for" a statutorily enumerated purpose, including a "charitable" purpose. To qualify for that exemption, "the primary use of the property must advance charitable purposes or goals of the religious organization." *German Apost. Christ. Church*, 279 Or at 642. A religious organization can thus satisfy ORS 307.140 by using its property in a way that furthers a charitable purpose, so long as "the property claimed to be exempt is reasonably necessary and actually used" for that purpose. *Golden Writ of God*, 300 Or at 483. If the charitable purpose for which the property is used is the advancement of religion, the use of the property "must be primarily for the benefit of the church as well as reasonably necessary for the furthering of the religious aims of the church." *German Apost. Christ. Church*, 279 Or at 642.

This court has followed a two part test to determine whether property is exempt under ORS 307.140: (1) the "use of property must be primarily for the benefit of the church"; and (2) the use of the must be "reasonably necessary for furthering" the charitable or religious aims of the church. *See Washington Co. Assessor II*, 18 OTR at 418. In addition, it is possible that some

portions of a property will qualify for exemption under the above test while other portions do not. *Id.* at 415. For the reasons described below, the court concludes that the portion of the property containing the Sharing Gardens is exempt, and the rest of the property, including the farmhouse, is not exempt from property taxation.

### *1. Sharing Gardens*

The first issue is whether the portion of the subject property containing the Sharing Gardens is used primarily for the benefit of Plaintiff. This court has observed that property is generally held to be exempt where the use of the property "only [provided] incidental benefit to the person using the property." *Washington Co. Assessor II*, 18 OTR at 418. Some incidental use of the subject property for a separate purpose does not negate the exemption, however. *See German Apost. Christ. Church* 279 Or at 643 (stating that the incidental use of property by a religious leader would not "defeat the exemption").

The court finds that the portion of property containing the Sharing Gardens is primarily used for Plaintiff's charitable purpose of growing produce that is donated to feed the hungry. Plaintiff offered ample evidence that the Sharing Gardens fulfilled Plaintiff's charitable objective to provide fresh produce to the local community at no cost. Plaintiff's charitable work through the Sharing Gardens was well documented by Peabody's testimony and numerous written statements from local beneficiaries of the Sharing Gardens' output. The overwhelming community support for the Sharing Gardens is evidence that Plaintiff's principle of generosity is more than an aspiration; it is practiced. Even though Burns and Peabody consume some of the produce grown in the Sharing Gardens, their incidental use of that portion of the property does not overshadow the Sharing Gardens' actual and primary use as a charitable enterprise.

To qualify for exemption, the Sharing Gardens must also be reasonably necessary to further the Plaintiff's charitable aims. The court finds that the Sharing Gardens are reasonably necessary to accomplish Plaintiff's charitable goal of providing free produce to its community. Moreover, providing food to the needy is a generally recognized charitable purpose that meets the criteria for exemption under ORS 307.140. *See German Apost. Christ. Church*, 279 Or at 642 ("It is enough if the use fulfills a generally recognized charitable function."). The court therefore concludes that the portion of the property containing the Sharing Gardens is exempt under ORS 307.140.

### 2. *Farmhouse*

In order to qualify for exemption the farmhouse must be primarily used to benefit Plaintiff in a way that is reasonably necessary to further Plaintiff's religious or charitable aims. *See German Apost. Christ. Church*, 279 Or at 642. Burns and Peabody live in the farmhouse; it is their residence. However, Burns and Peabody testified that portions of the farmhouse are used for demonstrations, administrative work, meetings before and after volunteer sessions, and maintaining the websites. Such uses of the subject property might support a finding that those portions of the property were used for the benefit of Plaintiff to advance its religious and charitable objectives. In this case, however, the court finds that the evidence is insufficient to show that the farmhouse was used primarily to support Plaintiff's charitable and religious aims. For example, Burns stated that meetings are held in the farmhouse before or after volunteer sessions, but he did not establish that any rooms were specifically dedicated as meeting spaces. Peabody stated that the kitchen was used for cooking and canning demonstrations, but she did not establish that the kitchen was primarily used for that purpose. There is insufficient evidence for the court to conclude that the farmhouse was used primarily for the benefit of Plaintiff.

Even if the court were to conclude that Burns and Peabody's residence at the farmhouse primarily benefited Plaintiff, Plaintiff would still have the burden of proving that the residence was reasonably necessary to further Plaintiff's religious or charitable goals. *See German Apost. Christ. Church*, 279 Or at 642. In cases involving residences, the properties "have been held exempt only when two requirements are met:" (1) "the official living in the residence must be required to live there by either church doctrine or practical necessity [;]" and (2) "the proximity of the residence to the house of worship must be necessary to further religious objectives." *Washington Co. Assessor II*, 18 OTR at 418-19.

Plaintiff has not demonstrated that the Farmhouse meets those requirements. First, Plaintiff has not shown that the dictates of its religious organization require the presence of its full members on the subject property. *Cf. House of Good Shepard v. Dept. of Rev.*, 300 Or 340, 710 P2d 778 (1985) (nuns required to live in a semi-cloistered residence by the dictates of their religion). Both Burns and Peabody testified that Plaintiff's full members must hold all things in common, which includes residences. That argument is not well taken because the subject property is owned by Plaintiff and not its full members. The residence is not held in common ownership, and Plaintiff's bylaws do not require full members to live in the subject property.

Second, Plaintiff has failed to establish that the presence of its full members on the subject property is a practical necessity. Until 2014, Plaintiff's full members had been living offsite since the founding of both Plaintiff and the Sharing Gardens. Burns testified that the move into the farmhouse was prompted by the realization that he could be present onsite to tend to the Sharing Gardens at all times. But the Sharing Gardens had been operating on the subject property for years before Burns and Peabody moved to the subject property. While it may be

convenient for Burns and Peabody to live in the farmhouse, the evidence does not show that it is a practical necessity for Burns and Peabody to reside at the subject property.

Finally, even if Plaintiff's full members were required to live on the subject property by the tenets of Plaintiff's religion, the location of the farmhouse is not necessary to further Plaintiff's religious or charitable objectives. Burns and Peabody's work in the Sharing Gardens advances Plaintiff's religion and advances Plaintiff's charitable goal of feeding the hungry. However, as noted above, Plaintiff operated as religious organization and the Sharing Gardens operated on the subject property before Burns and Peabody moved into the farmhouse. Even though it may be beneficial for Plaintiff to have Burns and Peabody live in the farmhouse, "it is not essential to the organization that they reside there and not elsewhere." *See Found. of Human Understanding*, 301 Or at 262-63 (caretakers' presence in residence beneficial but not necessary to advancement of religion).

## III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that a portion of the subject property is exempt from ad valorem taxation for the 2014-15 tax year. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that the portion of the subject property which contains the Sharing Gardens is exempt from ad valorem taxes for the 2014-15 tax year, and that the remainder of the subject property is not exempt from ad valorem taxes for the 2014-15 tax year.

Dated this ___ day of September 2015.

_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on September 9, 2015.*